UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| LINDA TAYLOR | PLAINTIFF |
| and | |
| ANTHEM HEALTH PLANS OF KENTUCKY d/b/a ANTHEM | INTERVENOR PLAINTIFF |
| v. | No. 4:22-cv-39-BJB |
| WESLEY TAYLOR | DEFENDANT |

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

      Linda Taylor sued her son, Wesley Taylor, for negligence in Daviess County, Kentucky, where she lives. Mr. Taylor, a West Virginian, removed and moved for summary judgment. Ms. Taylor alleges that while helping her son put his home on the market, she tried to break down a large cardboard box, which caught on a crack in the driveway and caused her to fall down. DNs 1-2 at 3, 17-2 at 6. Anthem, her health insurer, paid benefits in response to the injury and intervened in this case "to assert a subrogation and reimbursement interest." DN 15 at 1. But because no record evidence would support a reasonable jury verdict that cracked concrete caused her injury, summary judgment is due Mr. Taylor.

      Kentucky premises-liability doctrine governs this diversity case. To recover, a plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). The parties don't join issue regarding duty, breach, or injury at this stage of the litigation. Nor do they dispute Ms. Taylor's status as an "invitee" (which sometimes matters under Kentucky's status-based negligence doctrine, *see generally Shelton v. Ky. Easter Seals Society*, 413 S.W.3d 901, 909 (Ky. 2013).).

      Rather, the sole question on summary judgment is causation: whether Mr. Taylor's allegedly "negligent conduct [was] a legal cause of harm to" Ms. Taylor because it was "a substantial factor in bringing about the harm." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89, 91–92 (Ky. 2003) (citing § 431 of the RESTATEMENT (SECOND) OF TORTS)). *See* DN 16-1 at 6; DN 17-1 at 2–3.

Has Ms. Taylor identified admissible record material that creates a genuine issue of material fact on the question whether the driveway crack caused her injury? *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Her complaint doesn't mention a specific cause or defect. And her son says no reasonable verdict could rest on the record the parties have developed because "[s]he does not know what caused her fall." DN 16-1 at 2, 6. And summary judgment is appropriate, he contends, because "a jury verdict must be based on something other than speculation, supposition or surmise." *Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. 1972); *see* DN 16-1 at 5–6 (citing *Highsplint Coal Co. v. Palmer's Adm'r*, 20 S.W.2d 1020, 1022–23 (Ky. 1929)).

Unfortunately for Ms. Taylor, her evidence doesn't clear that hurdle. She testified that "[s]omething got caught. My foot either did or the box did or something to make me go down." L. Taylor Dep. at 101:23–25. "[I]t's the shift [of the box] that concerns me," she continued; "whether it caught, you know, that's what I wonder. Did it catch on that or was it just the fact that it wasn't on flat ground[?]" *Id.* at 101:7–11. The "area … was raised," causing her to wonder "if that could've – I mean when I'm standing on it[.] I just don't know how it could slip, or I slipped like that. Is it just the broken concrete in the driveway?" *Id.* at 64:24–65:2. That is a good question, but not one the record here addresses. If even Ms. Taylor doesn't know at this stage of the litigation, how could a jury presented with the same proof at trial?

Seeking to solidify her uncertain deposition testimony, Ms. Taylor's response cites a "Personal Statement" that she submitted in 2021 (apparently to "Tracy Ryder of Liberty Mutual") before filing this lawsuit.[1] L. Taylor Personal Statement (DN 23-3) at 2. This statement includes a brief "description of how the fall occurred" that includes a rather more definitive statement that she "realized weeks [after the fall] that the box had caught on the crack." *Id.* at 3. She believes she "slipped as [she] was trying to force" the box "to move when it would not move because of the crack." *Id.* Even assuming this contradictory account could support a jury verdict on causation, the statement cannot be considered at summary judgment because it is unsworn and includes no declaration that it was made under penalty of perjury.[2] *See Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998). Taylor's sworn deposition testimony, by contrast, is far less certain: she could only "wonder" whether the driveway crack caused her fall. L. Taylor Dep. at 101:7–11.

---

[1] Both parties initially cited Ms. Taylor's personal statement and deposition without attaching these exhibits to the complaint, motion, or response. Because they weren't part of the judicial record, the Court ordered these parties to file these exhibits, including the Personal Statement. *See* DNs 22; 23-3.

[2] Mr. Taylor's reply objected to this unsworn affidavit as "inadmissible hearsay" under Federal Rule of Civil Procedure 56(c)(2) after Ms. Taylor cited it in her response brief. Reply (DN 18) at 1*; see Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) (affidavit was "unsworn and thus … hearsay, which may not be considered on a motion for summary judgment").

Beyond this speculative testimony, the summary-judgment opposition cites no eyewitness, expert, or other affirmative evidence of causation. And this deposition testimony, according to Mr. Taylor, is as plain a statement as imaginable that his mother simply doesn't know what caused her fall: "I just don't know how it could slip, or I slipped like that. Is it just the broken concrete in the driveway?" L. Taylor Dep. at 64:24–65:2. After all, "[i]t is well established that a party opposing a motion for summary judgment must present evidence supporting [her] claims—'conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.'" *Brown v. Arch Wood Prot., Inc.*, 265 F. Supp. 3d 700, 707 (E.D. Ky. 2017). *See also Nelson v. Hollingsworth Oil Co.*, No. 2019-CA-290, 2019 WL 6998348, at *2 (Ky. Ct. App. Dec. 20, 2019) ("plaintiff's speculative hypothesis that a slick residue was left in the bathtub after it was cleaned … does not satisfy our standards for summary judgment") (internal quotation marks omitted).

By process of elimination, more or less, Ms. Taylor contends that a defect in the concrete driveway under the box "had to be the primary reason for her fall." DN 17-2 at 3. She "always had extremely good balance," but this fall "was a movement that I hadn't had before." L. Taylor Dep., at 101:25–102:2. She "never really had foot or ankle problems" before, aside from a fall while dancing 30 years ago. *Id.* at 72:7–13.

So the summary-judgment record reflects only the fact of a fall at this spot and the apparent absence of similar falls in Ms. Taylor's past. Even assuming the driveway was cracked or uneven,[3] and further assuming that crack amounted to a defect that the property owner was bound to remediate,[4] Kentucky courts have recognized this isn't enough to prove causation. In *Klinglesmith v. Estate of Pottinger*, for example, a plaintiff fell over the corner of a front porch landing while returning a baking pan to the homeowner. 445 S.W.3d 565, 566 (Ky. Ct. App. 2014). Photographs of a cracked and uneven concrete porch, without more, couldn't support causation given the plaintiff's testimony that she was not sure how or why she fell. *Id.* at 566, 569.

Ms. Taylor, much like Ms. Klinglesmith, points to photographs showing a crack and "settlement" in the area where she fell. Response to Summary Judgment (DN 17-2) at 4 (citing W. Taylor Dep. (DN 24) at 17:13–25 & 18:1–3); *see also* Photograph Exhibits (DNs 24-1–4). She purportedly "would not have slipped or had any trouble if the driveway had been flat," but acknowledges she had seen her son's driveway

---

[3] Apart from causation, the mechanism of defect and injury likewise aren't clear from the summary-judgment papers.

[4] What Ms. Taylor contends Mr. Taylor should've done about the crack remains similarly unclear.

before and "probably noticed the crack." *Id.* at 2–3 (quoting L. Taylor Personal Statement at 3); *see also id.* at 5 (describing "broken and sunken concrete"). When asked if she blamed it on a crack and settlement in the concrete, Ms. Taylor "th[ought] that could've definitely had something to do with it." L. Taylor Dep. at 102:3–8. Beyond that, a jury would be left without a reasoned basis to decide whether and how the driveway crack, as opposed to some other cause, contributed to the tumble Ms. Taylor took while breaking down the cardboard box.

Left with only Ms. Taylor's own speculation regarding whether and how the crack and box interacted, and whether and how that crack caused her to fall and injure herself, no reasonable jury could find on this record (even viewing it in the light most favorable to Ms. Taylor) that the driveway's condition was a substantial factor in causing her fall. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position"); *Phelps v. Bluegrass Hosp. Mgmt.*, 630 S.W.3d 623, 628 (Ky. 2021) ("Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents[.]") (quotation omitted).

## ORDER

The Court grants the motion for summary judgment (DN 16) and will enter a final judgment by separate order.

Benjamin Beaton, District Judge
United States District Court

June 7, 2023